TROY LAW, PLLC
*Attorneys for the Plaintiffs, proposed FLSA*
*Collective and potential Rule 23 Class Plaintiffs*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
johntroy@troypllc.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

PEDRO ALTAMIRANO,
*on behalf of himself and others similarly situated,*

                                        Plaintiff,                **Case No: 17-cv-5234**

                    v.                                            **29 U.S.C. § 216(b)**
                                                                  **COLLECTIVE ACTION &**
LA STANZA NYC LLC                                                 **FED. R. CIV. P. 23 CLASS**
        d/b/a La Stanza,                                          **ACTION**
HOUSE OF LASAGNA, INC.
        d/b/a House of Lasagna,                                   **COMPLAINT**
AVE. S. RESTAURANT CORP.
        d/b/a Domenico's and
        d/b/a Fagiolini,
SALMON RIVER PARTNERS, LLC
        d/b/a Salmon River,
LA PICCOLINA, INC.
        d/b/a Piccolino,
JOHN C O'BRIEN
        a/k/a Jack O'Brien,
MARIA O'BRIEN, and
GABRIELE RANZATO,
                                        Defendants.

----------------------------------------------------------------x

        Plaintiff PEDRO ALTAMIRANO (hereafter referred to as "Plaintiff"), on behalf of

himself and others similarly situated (collectively "Plaintiffs"), by and through his attorney, Troy

Law, PLLC, hereby brings this complaint against Defendants LA STANZA NYC LLC d/b/a La

Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT

CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a

Salmon River, LA PICCOLINA, INC. d/b/a Piccolino, JOHN C O'BRIEN a/k/a Jack O'Brien,

MARIA O'BRIEN, and GABRIELE RANZATO, and alleges as follows:

## INTRODUCTION

1.        This action is brought by Plaintiff, on behalf of himself as well as other similarly situated

employees against Defendants for alleged violations of the Fair Labor Standards Act, ("FLSA")

29 U.S.C. § 201 *et seq.* and of the New York Labor Law ("NYLL"), arising from Defendants'

various willful and unlawful employment policies, patterns and/or practices.

2.        Upon information and belief, Defendants have willfully and intentionally committed

widespread violations of the FLSA and NYLL by engaging in a pattern and practice of failing to

pay its employees, including Plaintiff, minimum wage and overtime compensation for all hours

worked over forty (40) each workweek.

3.        Defendants willfully failed to record all of the time that Plaintiff and similarly situated

employees work or worked, including work done in excess of forty hours each week.

4.        Plaintiff alleges pursuant to the FLSA, that he is entitled to recover from the Defendants:

(1) unpaid minimum wage, (2) unpaid overtime wages, (3) the full portion of the tips illegally

retained by Defendants, (4) liquidated damages, (5) prejudgment and post-judgment interest;

and/or (6) attorneys' fees and costs.

5.        Plaintiff further alleges pursuant to NYLL § 650 *et seq.* and 12 New York Codes, Rules

and Regulations §§ 146 ("NYCRR") that he is entitled to recover from the Defendants: (1)

unpaid minimum wage compensation, (2) unpaid overtime compensation, (3) unpaid "spread of

hours" compensation, (3) the full portion of the tips illegally retained by Defendants, (4)

unlawful deductions and kickbacks from the tip pool to Owner/Operator Defendant(s), (5)

liquidated damages equal to the sum of unpaid minimum wage, unpaid overtime, unpaid "spread

of hours," and unlawfully retained and deducted tips in the amount of twenty five percent under

NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent after April 9, 2011 under NY

Wage Theft Prevention Act, (6) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (7) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (8) 9% simple prejudgment interest provided by NYLL, (9) post-judgment interest, and (10) attorney's fees and costs.

6.      Plaintiff further alleges that he is entitled to recover out-of-pocket reimbursements for operating his delivery vehicle to deliver orders solely for Defendants' benefit, pursuant to an implied contract which arose between Plaintiffs and Defendants.

## JURISDICTION AND VENUE

7.      This Court has original federal question jurisdiction over this controversy under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFF

10.     Plaintiff PEDRO ALTAMIRANO was employed by Defendants as a deliveryman at 334 Lexington Avenue, New York, NY 10016 and 120 E 40th Street, New York, NY 10016.

**DEFENDANTS**

*Corporate Defendants*

11.    Defendant LA STANZA NYC LLC d/b/a La Stanza is a domestic limited liability company organized under the laws of the State of New York with a principal address at 334B Lexington Avenue, New York, NY 10016.

12.    LA STANZA NYC LLC d/b/a La Stanza is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

13.    LA STANZA NYC LLC d/b/a La Stanza purchased and handled goods moved in interstate commerce.

14.    Defendant HOUSE OF LASAGNA, INC. d/b/a House of Lasagna is a domestic business corporation organized under the laws of the State of New York with a principal address at 334 Lexington Avenue, New York, NY 10016.

15.    HOUSE OF LASAGNA, INC. d/b/a House of Lasagna is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

16.    HOUSE OF LASAGNA, INC. d/b/a House of Lasagna purchased and handled goods moved in interstate commerce.

17.    Defendant AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini was a domestic business corporation organized under the laws of the State of New York with a principal address at 120 E 40th Street, New York, NY 10016.

18.    AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini was a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

19.    AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini purchased and handled goods moved in interstate commerce.

20.    Defendant SALMON RIVER PARTNERS, LLC d/b/a Salmon River is a domestic limited liability company organized under the laws of the State of New York with a principal address at 120 E 40th Street, New York, NY 10016.

21.    SALMON RIVER PARTNERS, LLC d/b/a Salmon River is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

22.    SALMON RIVER PARTNERS, LLC d/b/a Salmon River purchased and handled goods moved in interstate commerce.

23.    Defendant LA PICCOLINA, INC. d/b/a Piccolino is a domestic limited liability company organized under the laws of the State of New York with a principal address at 120 E 40th Street, New York, NY 10016.

24.    LA PICCOLINA, INC. d/b/a Piccolino is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

25.    LA PICCOLINA, INC. d/b/a Piccolino purchased and handled goods moved in interstate commerce.

*Owner/Operator Defendants*

26.    The Owner/Operator Defendants are officers, directors, managers, majority shareholders and/or owners of the Corporate Defendants.

27.    Being among the ten largest shareholders and/or the ten LLC members with the largest ownership interests, the Owner/Operator Defendants are individually responsible for unpaid wages under the New York Business Corporation Law and New York Limited Liability Company Law.

28.    Owner/Operator Defendant JOHN C O'BRIEN a/k/a Jack O'Brien, (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employee records at LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

29.     JOHN C' OBRIEN is an active manager at LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

30.     JOHN C O'BRIEN a/k/a Jack O'Brien can be found at the store everyday from the afternoon to the evening at LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna and at the office at AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini.

31.     JOHN C O'BRIEN a/k/a Jack O'Brien acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

32.     Owner/Operator Defendant MARIA O'BRIEN (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON

RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

33.    Upon information and believe, MARIA O'BRIEN is the sister of JOHN C O'BRIEN

a/k/a Jack O'Brien.

34.    MARIA O'BRIEN physically paid Plaintiff his wages.

35.    MARIA O'BRIEN paid Plaintiff tips for pickup orders on Saturdays and Sundays.

36.    MARIA O'BRIEN kept Plaintiff's employee records.

37.    MARIA O'BRIEN acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2

and the regulations thereunder, and is jointly and severally liable with LA STANZA NYC LLC

d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S.

RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS,

LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

38.    Owner/Operator Defendant GABRIELE RANZATO (1) had the power to hire and fire

employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employee

records at LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House

of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON

RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

39.    GABRIELE RANZATO hired Plaintiff.

40.    GABRIELE RANZATO set Plaintiff's schedule.

41.    GABRIELE RANZATO directed Plaintiff in the performance of his job duties.

42.    GABRIELE RANZATO failed to turn over to Plaintiff tips for pickup orders on

weekdays.

43.    GABRIELE RANZATO acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL § 2 and the regulations thereunder, and is jointly and severally liable with LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino.

## STATEMENT OF FACTS

### *Corporate Defendants Constitute an Enterprise*

44.    LA STANZA NYC LLC, HOUSE OF LASAGNA, INC., AVE. S. RESTAURANT CORP., SALMON RIVER PARTNERS, LLC, and LA PICCOLINA, INC. operate a group of Italian restaurants doing business variously as La Stanza, House of Lasagna, Domenico's, Fagiolini, Salmon River, and Piccolino.

45.    At all relevant times herein, LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino were, and continue to be, a single and joint employer with a high degree of interrelated and unified operation, and share common management, centralized control of labor relations, common ownership, common control, common business purposes and interrelated business goals.

46.    LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino together constitute an enterprise engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

47.     LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino purchase and handle goods moved in interstate commerce.

48.     LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino operate three (3) active Italian restaurants:

      a.     La Stanza, 334B Lexington Avenue, New York, NY 10016;

      b.     House of Lasagna, 334 Lexington Avenue, New York, NY 10016; and

      c.     Piccolino, 30-86 51st Street, Store 5, Woodside, NY 11377

and formerly operated three further Italian restaurants:

      d.     Domenico's, 120 E 40th Street, New York, NY 10016;

      e.     Fagiolini, 120 E 40th Street, New York, NY 10016; and

      f.     Salmon River, 3 E 40th Street, New York, NY 10016.

49.     LA STANZA NYC LLC d/b/a La Stanza, HOUSE OF LASAGNA, INC. d/b/a House of Lasagna, AVE. S. RESTAURANT CORP. d/b/a Domenico's and d/b/a Fagiolini, SALMON RIVER PARTNERS, LLC d/b/a Salmon River, and LA PICCOLINA, INC. d/b/a Piccolino were and continue to be owned and operated by the same individuals, including, JOHN C. O'BRIEN and MARIA O'BRIEN, and managed by the same individuals, including, JOHN C. O'BRIEN, MARIA O'BRIEN, and GABRIELE RANSATO.

50.     House of Lasagna and La Stanza are located in the same building, with House of Lasagna located on the first floor and La Stanza located on the second floor.

51.     Upon personal knowledge of Plaintiff, House of Lasagna and La Stanza frequently and regularly transfer employees and materials among themselves, including Plaintiff PEDRO ALTAMIRANO.

52.     Soon after the closure of Domenico's/Fagiolini in 2014, manager GABRIELE RANSATO, along with Owner/Operators JOHN C. O'BRIEN and MARIA O'BRIEN relocated to La Stanza/House of Lasagna.

53.     GABRIELE RANSATO contacted PEDRO ALTAMIRANO and asked him to join.

54.     La Stanza's website, http://www.lastanzanyc.com/, proclaims La Stanza to be "House of Lasagna's ever-so-slightly more refined sister restaurant."

***Defendants Committed the Following Alleged Acts Knowingly, Intentionally and Willfully against the Plaintiff, the FLSA Collective Plaintiffs, and the Class***

55.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees at least the New York minimum wage for each hour worked.

56.     While employed by Defendants, Plaintiff was not exempt under federal and state laws requiring employers to pay employees overtime.

57.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful overtime of one and one-half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

58.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff and similarly situated employees their lawful spread of hours for workdays that began and ended ten (10) hours apart.

59.     At all relevant times, Defendants knowingly and willfully failed to keep full and accurate records of Plaintiff's hours worked and wages paid.

60.     Defendants failed to keep full and accurate records in order to mitigate liability for wage violations.

61.     At all relevant times, Defendants knowingly and willfully failed to furnish Plaintiffs and similarly situated employees notice that they were claiming tip credit towards Plaintiffs' and similarly situated employees' minimum wage.

62.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with Time of Hire Notices in their primary languages reflecting rates of pay and payday as well as paystubs that listed the employee's name, the employer's name, the employer's address and telephone number, the employee's rate or rates of pay, any deductions made from employees' wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day.

63.     At all relevant times, Defendants knowingly and willfully failed to provide Plaintiff and similarly situated employees with statements every payday in their primary languages that accurately listed all of the following: the dates of work covered by that payment of wages;  the employee's name; the name of the employer;  the address and phone number of the employer;  the employee's rate or rates of pay and basis thereof; the employee's gross wages;   the employee's deductions;  allowances, if any, claimed as part of the minimum wage;  net wages; the employee's regular hourly rate or rates of pay; the employee's overtime rate or rates of pay; the employee's number of regular hours worked, and the employee's number of overtime hours worked.

64.     Pursuant to 12 NYCRR § 146-2.2 and 29 U.S.C. § 203(m), an employer cannot take credit towards the basic minimum wage if a service employee or food service worker has not received notification of tip credit.

65.    Defendants knew that the nonpayment of wages for all hours worked and the nonpayment of wages at one and one-half time (1.5x) employees' regular rates would financially injure Plaintiff and similarly situated employees, and violate state and federal laws.

66.    At all relevant times, Defendants failed to post the required New York State Department of Labor posters regarding minimum wage pay rates, overtime pay, and pay day.

**Plaintiff PEDRO ALTAMIRANO**

67.    From 2010 to April 10, 2014, Plaintiff was employed by Defendants to work as a deliveryman at Domenico's, 120 E 40th Street, New York, NY 10016.

68.    On or about April 10, 2014, Domenico's closed, and Plaintiff was transferred to La Stanza and House of Lasagna at 334 Lexington Avenue, New York, NY 10016.

69.    From on or about April 10, 2014 to June 16, 2017, Plaintiff was employed by Defendants to work as a deliveryman at La Stanza and House of Lasagna at 334 Lexington Avenue, New York, NY 10016.

70.    From 2010 to February 28, 2015, Plaintiff worked from:

    a.    16:00 to 22:30 for six and a half (6.5) hours on Sundays, Mondays, Wednesdays, and Thursdays for four (4) days and twenty-six (26) hours a week;

    b.    16:00 to 22:00 for six (6) hours on Fridays and Saturdays, for (2) days and twelve (12) hours a week.

71.    From 2010 to February 28, 2015, Plaintiff worked around thirty-eight (38) hours per week.

72.    From on or about March 01, 2015 to June 16, 2017, Plaintiff worked from:

    a.    16:00 to 22:30 for six and a half (6.5) hours on Sundays, Wednesdays, and Thursdays for three (3) days and nineteen and a half (19.5) hours a week;

    b.    16:00 to 22:00 for six (6) hours on Fridays and Saturdays, for (2) days and twelve

(12) hours a week.

73.     From March 01, 2015 to June 16, 2017, Plaintiff worked around thirty-one and a half

(31.5) hours per week.

74.     Throughout his employment, Plaintiff would be required to work at least until 23:00

approximately three (3) times per week, on especially busy days (including rainy days, because

more customers would order in rather than eat out on rainy days).

75.     Throughout his employment, Plaintiff would be required to work from 15:00 if the

restaurant received a big order; this happened approximately two (2) times per month.

76.     Upon information and belief, Plaintiff's actual hours worked per week frequently

exceeded forty (40).

77.     Between 16:00 and 17:00 each day, Plaintiff was required to perform non-tipped side

work, including making salads, cutting cheese and bread. Throughout the day, Plaintiff was

required to perform non-tipped side work, including packing delivery containers, sorting utensils,

making and packing salads, and cutting and packing bread.

78.     Taken together this non-tipped side work amounted to approximately two (2) hours of

Plaintiff's working day and greater than twenty percent (20%) of Plaintiff's working day.

79.     Further, Defendants illegally failed to turn over all tips that the customers intended to

leave for Plaintiff.

80.     Throughout his employment, Plaintiff was paid seven dollars per hour ($7.00/hr), but the

number of hours for which he was paid was consistently less than the number of hours he

worked.

81.     In particular, Plaintiff was paid for four and a half (4.5) hours per day from 17:00 to

21:30 even though he consistently worked more than four and a half (4.5) hours each day.

82.    From 2010 to on or about January 2016, Plaintiff was paid every Friday, in cash.

83.    From on or about January 2016 to June 16, 2017, Plaintiff was paid every Friday, by check.

84.    Plaintiff would receive paystubs along with his pay, but only in English. Plaintiff's primary language is Spanish.

85.    Notwithstanding Plaintiff's actual hours worked, Plaintiff's paystubs would only ever record that he worked between 17:00 and 21:30 per day, and his wages were computed according to those recorded hours worked.

86.    Throughout his employment, Plaintiff was not paid overtime for hours worked beyond forty (40) in a workweek.

87.    From on or about April 10, 2014 to June 16, 2017, Plaintiff's paystubs named both La Stanza and House of Lasagna as his paymasters, and split responsibility for his pay between the two restaurants.

88.    Throughout his employment, Plaintiff received tips in addition to his wages.

89.    Plaintiff was not informed at the time he was hired that Defendants would claim a tip credit against the minimum wage, and was not informed of tip credits against the minimum wage on his paystubs.

90.    Plaintiff made approximately thirty (30) deliveries per day at Domenico's, and between twelve (12) and twenty (20) deliveries per day at La Stanza and House of Lasagna.

91.    At La Stanza and House of Lasagna, Plaintiff's delivery range covered between 26th Street and 56th Street in Manhattan. Plaintiff would usually take about five (5) orders to be delivered per trip.

92.    In order to make his deliveries on behalf of the Defendants, Plaintiff was required to

purchase:

     a.     Eight (8) bicycles costing approximately two hundred dollars ($200.00) apiece;

     b.     Three (3) replacement tires, costing approximately fifteen dollars ($15.00) apiece, per month;

     c.     Four (4) brake replacements, costing approximately thirty-five dollars ($35.00) apiece, per year;

     d.     One light, costing approximately sixty-five dollars ($65.00);

     e.     One battery costing twenty-five dollars ($25.00) every two (2) weeks; and

     f.     Two helmets costing twenty-five dollars ($25.00) apiece.

93.     Defendants did not reimburse Plaintiff for these expenses.

94.     In addition to delivering food, Plaintiff also worked as the packer.

95.     On average, Plaintiff packed between five (5) and seven (7) "pickup" orders—where the customer would pick up the order from the restaurant rather than having it delivered—on a typical weekday. Each pickup order cost the customer between fifteen dollars ($15.00) and sixty dollars ($60.00), on average about thirty dollars ($30.00).

96.     At all relevant times, customers would typically leave five-dollar ($5.00) tips, or sixteen and two-thirds percent (16.67%) tips on average for the packer.

97.     Altogether, as the packer, Plaintiff would have been entitled to approximately thirty dollars ($30.00) in pickup order tips per day.

98.     At all relevant times, when pickup orders were handled on weekends by MARIA O'BRIEN, Plaintiff received tips intended for him.

99.     At all relevant times, when pickup orders were handled during the weekday by GABRIELE RANSATO, Plaintiff did not receive any tips from pickup orders

100.    Instead, GABRIELE RANSATO only showed Plaintiff orders once in a while when the customer did not leave any tips for the packer.

101.    Throughout his employment, Plaintiff was not afforded any rest breaks during the working day. Any time he was not making deliveries, Plaintiff was required to do non-tipped side work.

102.    Plaintiff was afforded one five-minute meal break during the day to eat supper.

<u>**COLLECTIVE ACTION ALLEGATIONS**</u>

103.    Plaintiff brings this action individually and on behalf of all other and former non-exempt deliverymen, cooks, dishwashers, other kitchen workers, bartenders, waitstaff, cleaners, and bussers who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and who were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

104.    Plaintiff also brings this action individually and on behalf of non-exempt deliverymen employed by Defendants who were subject to illegal retention of their tips in contravention of 29 U.S.C. §203(m) and (t).

<u>**CLASS ACTION ALLEGATIONS**</u>

105.    Plaintiff brings his NYLL claims pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

106.    All said persons, including Plaintiff, are referred to herein as the "Class."

107.    The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants'

records. For purpose of notice and other purposes related to this action, their names and

addresses are readily available from Defendants. Notice can be provided by means permissible

under said F.R.C.P 23.

**Numerosity**

108.    The proposed Class is so numerous that joinder of all members is impracticable, and the

disposition of their claims as a class will benefit the parities and the Court. Although the precise

number of such persons is unknown, and the facts on which the calculation of the number is

presently within the sole control of the Defendants, upon information and belief, there are more

than forty (40) members of the class.

**Commonality**

109.    There are questions of law and fact common to the Class which predominate over any

questions affecting only individual class members, including:

a.       Whether Defendant employed Plaintiff and the Class within the meaning of the

New York law;

b.      Whether Plaintiff and Class members are paid at least the minimum wage for each

hour worked under the New York Labor Law;

c.      Whether Plaintiff and Class members are entitled to and paid overtime under the

New York Labor Law;

d.      Whether Plaintiffs and tipped Class members were subject to illegal tip retention

by Defendants;

e.      Whether Plaintiffs and tipped Class members were forced to acknowledge false

and inaccurate information on their weekly paystub as a precondition of continued

employment;

f.       Whether Defendants maintained a policy, pattern and/or practice of failing to pay

Plaintiff and the Rule 23 Class spread-of-hours pay as required by the NYLL;

g.        Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

h.        Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

i.         Whether Defendants provided full and accurate paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiff and the Rule 23 class on each payday; and

j.         At what common rate, or rates subject to common method of calculation was and is Defendants required to pay the Class members for their work.

### *Typicality*

110.    Plaintiff's claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to pay overtime, failing to pay spread of hours, and illegal tip retention. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### *Adequacy*

111.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and

competent representing Plaintiff in both class action and wage and hour employment litigation cases.

***Superiority***

112.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

113.    Upon information and belief, Defendants and other employers throughout the state

violate the New York Labor Law. Current employees are often afraid to assert their rights out of

fear of direct or indirect retaliation. Former employees are fearful of bringing claims because

doing so can harm their employment, future employment, and future efforts to secure

employment. Class actions provide class members who are not named in the complaint a degree

of anonymity which allows for the vindication of their rights while eliminating or reducing these

risks.

<h2 align="center"><u>STATEMENT OF CLAIMS</u></h2>

<strong>COUNT I.<br>
<u>[Fair Labor Standards Act—Failure to Pay Minimum Wage<br>
Brought on behalf of the Plaintiff and the FLSA Collective]</u></strong>

114.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully
set forth herein.

115.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and
similarly situated employees for some or all of the hours that they worked.

116.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory
minimum wage to Plaintiff, and the similarly situated collective action members, for some or all
of the hours they worked.

117.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall
be liable to the employees affected in the amount of their unpaid minimum compensation, and in
an additional equal amount as liquidated damages.

118.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced
by failing to compensate Plaintiff and Collective Class Members at the statutory minimum wage
when they knew or should have known such was due and that failing to do so would financially
injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Failure to pay Minimum Wage
### Brought on behalf of the Plaintiff and the Rule 23 Class]

119.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

120.    At all relevant times, Plaintiff was employed by Defendants within the meaning of New York Labor Law §§ 2 and 651.

121.    At all relevant times, Defendants had a policy and practice of refusing to pay Plaintiff and the class members for some or all of the hours they worked.

122.    At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the class members, for some or all of the hours they worked.

123.    Defendants knowingly and willfully violated Plaintiff's and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

124.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) of the shortfall under NYLL §§ 190 *et seq.*, §§ 650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Failure to Pay Overtime
### Brought on behalf of the Plaintiff and the FLSA Collective]

125.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

126.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he is employed, or one and one-half times the minimum

wage, whichever is greater. 29 USC § 207(a).

127.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207
shall be liable to the employees affected in the amount of their unpaid overtime compensation,
and in an additional equal amount as liquidated damages. 29 USC § 216(b).

128.    Defendants' failure to pay Plaintiff and the FLSA Collective their overtime pay violated
the FLSA.

129.    At all relevant times, Defendants had, and continue to have, a policy of practice of
refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiff and
Collective Action Members for all hours worked in excess of forty (40) hours per workweek,
which violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C.
§§ 207(a)(1) and 215(a).

130.    The FLSA and supporting regulations required employers to notify employees of
employment law requires employers to notify employment law requirements. 29 C.F.R. § 516.4.

131.    Defendants willfully failed to notify Plaintiff and FLSA Collective of the requirements of
the employment laws in order to facilitate their exploitation of Plaintiff' and FLSA Collectives'
labor.

132.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced
by their failure to compensate Plaintiff and Collective Class Members the statutory overtime rate
of time and one half for all hours worked in excess of forty (40) per week when they knew or
should have known such was due and that failing to do so would financially injure Plaintiff and
Collective Action members.

## COUNT IV.
### [Violation of New York Labor Law—Failure to Pay Overtime
### Brought on behalf of Plaintiff and the Rule 23 Class]

133.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

134.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty-five percent (25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

135.    At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiff at one and one half times the hourly rate the Plaintiff and the class are entitled to.

136.    Defendant' failure to pay Plaintiff his overtime pay violated the NYLL.

137.    Defendants' failure to pay Plaintiff was not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Failure to Pay Spread of Time Brought on behalf of Plaintiff and the Rule 23 Class]

138.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

139.    The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, *et seq.*, and §§ 650, *et seq.*, and New York State Department of Labor regulations § 146-1.6.

140.    Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Violation of 29 U.S.C. § 203(m) and (t)—Illegal Tip Retention Brought on behalf of Plaintiffs and the FLSA Collectiv]

141.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

142.    A tip is the sole property of the tipped employee regardless of whether the employer

takes a tip credit.

143.    The FLSA prohibits any arrangement between the employer and tipped employee

whereby any part of the tip received becomes the property of the employer.

144.    Retaining portions of the tips from Toasties deliverymen to unjustly enrich the Owner/

Operator Defendants or using portion of the tips to pay non-tipped employees is prohibited under

the FLSA.

145.    The FLSA also provides that where tips are charged on a credit card and the employer

must pay the credit card company a percentage on each sale, the employer must pay the

employee the tip, less that percentage.

146.    Employers are prohibited from unjustly enriching themselves by charging their

employees a gratuities service fee charge which exceed the costs of converting credit card

gratuities into cash.


**COUNT VII.**
**[Violations of 12 NYCRR §§ 146-2.18 and 2.20—Illegal Tip Retention**
**Brought on behalf of Plaintiffs and the Rule 23 Class]**

147.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully

set forth herein.

148.    NYLL § 196-d of the New York State Labor Law prohibits employers from demanding,

accepting, or retaining, directly or indirectly, any part of an employee's gratuity or any charge

purported to be a gratuity.

149.    A charge purported to be a gratuity, including charges advertised to be "delivery fee" to

customers, must be distributed in full as gratuities to the service employees or food service

workers who provided the service.

150.    12 NYCRR § 146-2.18 provides that there shall be a rebuttable presumption that any charge in addition to charges for food, beverage, lodging, and other specified materials or services, including but not limited to any charge for "service" or "food service," is a charge purported to be a gratuity.

151.    12 NYCRR § 146-2.20 provides that when tips are charged on credit cards, the employer must return to the employee the full amount of the tip charged on credit card minus the pro-rated portion of the tip taken by the credit card company.

152.    Employers are prohibited from unjustly enriching themselves by charging their employees a gratuities service fee charge which exceed the costs of converting credit card gratuities into cash.

## COUNT VIII.
### [Violations of NYLL 193 & 196(d)—Unlawful Deductions
### Brought on behalf of Plaintiffs and the Rule 23 Class]

153.    Plaintiffs repeat and re-allege all allegations in all preceding paragraphs as if fully set forth herein.

154.    Throughout the period covered by the applicable statute of limitations, Defendants knowingly retained portions of gratuities received by Plaintiffs in violation of the NYLL and the supporting regulations of the New York State Department of Labor.

155.    Due to Defendants' willful violations of the NYLL, Plaintiffs and the members of the Class are entitled to recover from Defendants the amounts of any unlawful deductions, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

**COUNT IX.**
[Breach of Implied Contract for Reimbursement of all Costs and Expenses of Delivery
Vehicle, including Depreciation, Insurance, Maintenance and Repairs
Brought on behalf of the Plaintiff and the Rule 23 Class]

156.    Plaintiff re-alleges and incorporate by reference all preceding paragraphs as though fully set forth herein.

157.    Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including bicycles and electric bicycles.

158.    Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of his bicycle and electricity delivery bicycle.

159.    The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the delivery vehicle in working condition.

160.    Plaintiff purchased, maintained and repaired the bicycle and electric bicycle at his own expense.

161.    Plaintiff performed these deliveries for the sole benefit of the Defendants.

162.    Defendants neither explicitly nor implicitly requested Plaintiff to cease the purchase of gasoline and/or the maintenance of the vehicle.

163.    As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for bicycle purchase and vehicle maintenance, in exchange for compensation from Defendants for such expenses.

164.    Defendants never compensated Plaintiff for any expenses incurred from the purchase and maintenance of the electric bicycles, and the purchase of batteries. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiff a reasonable sum under the afore-alleged facts.

165.    Defendants owe Plaintiff his overdue costs of delivery vehicles, cost of battery change, if applicable, and maintenance of the bicycle.

## COUNT X.
### [Violation of New York Labor Law—Failure to Provide Meal Periods Brought on behalf of Plaintiff and the Rule 23 Class]

166.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

167.    The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL § 162.

168.    Defendants failed to provide meal periods required by NYLL § 162 for every day that Plaintiff work or worked.

169.    Though the Department of Labor commissioner may permit a shorter time to be fixed for meal periods than hereinbefore provided, such permit must be in writing and be kept conspicuously posted in the main entrance of the establishment. No such permit is posted.

170.    Defendants' failure to provide the meal periods required by NYLL § 162 was not in good faith.

## COUNT XI.
### [Violation of New York Labor Law—Failure to Keep Records Brought on behalf of Plaintiff and the Rule 23 Class]

171.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

172.    Defendants did not maintain, establish and preserve Plaintiff' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

173.    As a result of Defendants' unlawful conduct, Plaintiff has sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

174.    Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff in order to facilitate their exploitation of Plaintiff' labor.

175.    Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff was not in good faith.

**COUNT XII.**
**[Violation of New York Labor Law—Failure to Provide Time of Hire Wage Notice**
**Brought on behalf of Plaintiff and the Rule 23 Class]**

176.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

177.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL § 195-1(a).

178.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle

and rate of overtime on their or his first day of employment.

179.    Defendants not only did not provide notice to each employee at Time of Hire, but failed to

provide notice to Plaintiff even after the fact.

180.    Due to Defendants' violations of New York Labor Law, Plaintiff is entitled to recover from

Defendants, jointly and severally, $50 for each workday that the violation occurred or continued

to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law.

N.Y. Lab. Law § 198(1-b).

## COUNT XIII.
### [Violation of New York Labor Law—Failure to Provide Pay Stubs
### Brought on behalf of Plaintiff and the Rule 23 Class]

181.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

182.    The NYLL and supporting regulations require employers to provide detailed paystub

information to employees every payday. NYLL § 195-1(d).

183.    Defendants have failed to make a good faith effort to comply with the New York Labor

Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after

each Plaintiff' payday.

184.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover

from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for

each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab.

Law § 198(1-d).

## COUNT XIV.
### [Violations of 26 USC § 7434—Fraudulent Filing of IRS Returns
### Brought on behalf of the Plaintiff and the Rule 23 Class]

185.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully

set forth herein.

186.    26 USC § 7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

187.    Due to Defendants' violations of 26 USC § 7434, Plaintiff is entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiff as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XV.
### [Violations of New York General Business Law § 349—Deceptive Acts and Practices Brought on behalf of the Plaintiff and the Rule 23 Class]

188.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

189.    New York General Business Law § 349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

190.    Due to Defendants' violations of New York GBS Law § 349, Plaintiff is entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

191.    Plaintiff demands the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on the behalf of the FLSA Collective Plaintiffs and Rule 23 Class, respectfully requests that this Court enter a judgment providing the following

relief:

a)      Authorizing Plaintiff at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)      Certification of this case as a collective action pursuant to FLSA;

c)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)      An injunction against Corporate Defendants, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)      An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due Plaintiff and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior

to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft

Prevention Act;

g)       An award of wrongfully misappropriated portion of Plaintiff's tips, pursuant to 29

U.S.C. § 203(m), NYLL § 146-2.18, and NYLL § 146-2.20;

h)       An award of liquidated and/or punitive damages as a result of Defendants'

knowing and willful failure to pay wages at least the hourly minimum wage, overtime

compensation pursuant to 29 U.S.C. § 216;

i)       Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a Time of Hire Notice detailing rates of pay and payday;

j)       Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to

provide a paystub that lists employee's name, employer's name, employer's address and

telephone number, employee's rate or rates of pay, any deductions made from

employee's wages, any allowances claimed as part of the minimum wage, and the

employee's gross and net wages for each pay day;

k)       An award to reimburse Plaintiff's document out-of-pocket delivery vehicle costs,

pursuant to the implied contract which arose between Plaintiff and Defendants;

l)       An award of liquidated and/ or punitive damages as a result of Defendants' willful

failure to overtime compensation, and "spread of hours" premium pursuant to New York

Labor Law;

m)       An award of costs and expenses of this action together with reasonable attorneys'

and expert fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

n)       The cost and disbursements of this action;

o)       An award of prejudgment and post-judgment fees;

p)      Providing that if any amounts remain unpaid upon the expiration of ninety days

following the issuance of judgment, or ninety days after expiration of the time to appeal

and no appeal is then pending, whichever is later, the total amount of judgment shall

automatically increase by fifteen percent, as required by NYLL § 198(4); and

q)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, New York
       July 11, 2017

                                    TROY LAW, PLLC
                                    *Attorneys for the Plaintiff, proposed FLSA*
                                    *Collective and potential Rule 23 Class*


                                    ____/s/ John Troy_____
                                    John Troy (JT0481)
                                    41-25 Kissena Boulevard Suite 119
                                    Flushing, NY 11355
                                    Tel: (718) 762-1324
                                    Email: johntroy@troypllc.com